Edna Jurgensen v. Commissioner. Adolph Jurgensen v. Commissioner.
Jurgensen v. Commissioner
Docket Nos. 25542, 25543.
United States Tax Court
1950 Tax Ct. Memo LEXIS 41; 9 T.C.M. (CCH) 1027; T.C.M. (RIA) 50274; November 17, 1950
*41 Richard W. Wilson, Esq., 74 Trinity Pl., New York 6, N. Y., for the petitioners. Lester H. Salter, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax for 1945 of $479.84 in the case of Edna Jurgensen and $619.28 in the case of Adolph Jurgensen. The only issue for decision is whether the Commissioner erred in failing to recognize Eileen Jurgensen as a partner in John E. Dale Fuel Company and in taxing her share of the income of that partnership to her parents, the petitioners herein. Findings of Fact The petitioners, Adolph and Edna Jurgensen, are husband and wife. They filed separate income tax returns for the calendar year 1945 with the collector of internal revenue for the fifth district of New Jersey. The John E. Dale Fuel Corporation, hereafter called the corporation, had been engaged for several years in the coal and fuel oil business in Jersey City, New Jersey. John E. Dale was the president, general manager and largest stockholder of the corporation. One hundred shares of stock had been issued. Twenty of the shares had been in the name of Adolph Jurgensen for several years *42 prior to June 30, 1944. The record does not show whether those shares belonged to him alone or belonged to him and Edna jointly. Adolph acquired five additional shares on or about June 30, 1944 and, on that day, transferred eight shares to Edna and eight to their daughter, Eileen, who was about 20-21 years of age. Dale then owned 55 shares and 20 shares belonged to two other stockholders. There had been discussions prior to June 30, 1944, in which Dale and Adolph had taken a prominent part, resulting in a decision to change the business from a corporation to a partnership in order to reduce taxes. Instruments were executed by the corporation and the stockholders to transfer the assets of the corporation, subject to its liabilities, to the stockholders. An agreement, dated June 30, 1944, was entered into by Dale, Adolph, Edna, Eileen, and the other two stockholders of the corporation in which they agreed to conduct the business thereafter as partners for one year from July 1, 1944 to June 30, 1945. The capital was to consist of the former corporate assets transferred by the stockholders to the partnership. Dale's share of the capital and profit and losses was to be 55 per cent, *43 Adolph's 9 per cent, Edna's 8 per cent, and Eileen's 8 per cent. Dale was to receive a salary of $12,000 a year, in addition to his share of the profits, for managing the business. Dale operated the business for the partnership for its fiscal year beginning July 1, 1944 and ending June 30, 1945. None of the other partners took any part in the operation of the business, although Adolph and Dale had frequent conferences in regard to the fuel business. The partnership filed a return on Form 1065 for its fiscal year ended June 30, 1945, disclosing income distribution to the partners as follows: Ordinary
Net long-term
net income
capital gains
John E. Dale
$25,271.64
$ 563.96
Ira Van Vliet
2,923.19
102.54
Virginia Van Vliet
2,923.19
102.54
Adolph Jurgensen
2,435.99
85.44
Edna Jurgensen
2,435.99
85.44
Eileen Jurgensen
2,435.99
85.44
Total
$38,425.99
$1,025.36 The petitioners reported on their individual returns for 1945 the amounts shown on the partnership return as their distributive shares of the income of the partnership. The Commissioner, in determining the deficiency against Edna, stated: "It has been determined that your distributive *44 share of the net income and capital gain of the John E. Dale Fuel Company for the taxable year 1945 is $3,568.71 and $123.04, respectively, in lieu of the amounts of $2,435.99 and $85.44 reported by you for said year." The Commissioner, in determining the deficiency against Adolph, stated: "It has been determined that your distributive share of the net income and capital gain of the John E. Dale Fuel Company for the taxable year 1945 is $3,866.11 and $133.30, respectively, in lieu of the amounts of $2,435.99 and $84.55 reported by you for said year." He made those adjustments upon the theory that Eileen had received, as gifts, four shares from Adolph and four shares from Edna to make up her eight shares of the stock of the corporation, leaving Adolph with nine shares and Edna with eight; Eileen had not become a real partner; Edna had a partnership interest of 12 per cent; and Adolph had a partnership interest of 13 per cent. The partnership had on its books a capital account headed "A. E. and E. Jurgensen" showing the total capital of the three Jurgensens and changes therein, without showing the separate interests of each. It was not intended that any of the partners should *45 withdraw earnings of the fiscal year ended June 30, 1945 and none of the partners made any withdrawals during that period. The Van Vliets sold their interest in the business to Dale and the Jurgensens at some time, not shown by the record, during the latter half of 1945. Dale, in the early part of 1946, purchased the interest of the Jurgensens in the partnership business for $45,000. He issued a check for $15,000, dated February 5, 1946, to each of the three Jurgensens. An accountant wrote on the back of each check "Pay to Prospect Park Nat'l Bank." The checks were then endorsed by the payees and the $45,000 was used to make a payment on a bank loan of $48,000 which had been secured by Supreme Fuel Sales Company, a partnership consisting of Adolph and Edna Jurgensen. Eileen had no interest in that partnership. A loan account on the books of that partnership showed a balance due Eileen on February 28, 1950, of $18,267. No interest was payable on the loan account. The record is not clear as to the extent, if any, to which Eileen could or did make withdrawals from Supreme Fuel Sales Company of funds due her or as to how the credit balance developed. The petitioners' son had worked *46 for the corporation as a bookkeeper until he went into the military service during the early part of 1944. Dale thereafter suggested to Adolph that Eileen might be employed by the corporation to do the work formerly done by her brother and Adolph might give her some interest in the corporation as an inducement to her in that connection. Eileen was never employed by and never performed any services for the corporation or the partnership. Dale never discussed with Eileen or with Edna the dissolution of the corporation, the formation of the partnership, the business of the partnership, or the purchase of the Jurgensens' interest in the business. The record does not show that Eileen or Edna were consulted about any of those matters by anyone. Dale and Adolph negotiated in regard to the sale of the Jurgensens' interests in the business to Dale. The parties to the agreement of June 30, 1944, including Eileen, really intended that she should join with them as a partner in the conduct of the business for the fiscal year July 1, 1944 to June 30, 1945. Opinion MURDOCK, Judge: The Commissioner, in determining the deficiency, refused to recognize Eileen as a partner. He taxed her distributive *47 share of the partnership income for its fiscal year ended June 30, 1945 to her mother and father as if the father had a 13 per cent interest and the mother had a 12 per cent interest. The petitioners contend that it was error on the part of the Commissioner to tax them with the share of the partnership earnings which belonged to their daughter. Decision of the issue thus raised depends upon whether or not Eileen and the other parties to the partnership agreement really intended that she should join with them as a partner in the conduct of the business. . It is possible for one who owns capital in a business, but who performs no services for that business, to make a gift of a part of his capital interest so that thereafter the income from the business attributable to the capital given away is no longer taxable to the donor. Edna performed no services for the business at any time material hereto and it does not appear that she took part in the various transactions to a greater extent than did Eileen. It also appears that Adolph did not perform any services for the business. He conferred *48 frequently with Dale in regard to the fuel business but Dale ran the business of the John E. Dale Fuel Company and Adolph not only was not regularly employed in that business but contributed no services whatsoever to it. Thus, Eileen received a gift of a capital interest in a business from donors who performed no services for the business. Her distributive share of the net income of the partnership was not earned by Adolph or by Edna through any personal services or efforts of theirs. Cf. . Eileen, after receiving the gift, entered into the partnership agreement whereby she contributed her interest in the capital of the business to the partnership. Perhaps the weakest point in the petitioners' effort to show a real intent to have Eileen as a partner is the evidence of Eileen's control over and enjoyment of her alleged share of the profits and capital of the partnership. Adolph apparently made all decisions without consulting Eileen. The Jurgensens' interest in the partnership was lumped in one account so that there was no separate account on the partnership books showing Eileen's interest, either in capital or earnings. It was not intended *49 that any of the partners should withdraw earnings, and Eileen, like the others, did not withdraw any of the profits of the business for the fiscal year ended June 30, 1945. Dale issued a check payable to Eileen in February 1946 which was supposed to cover her entire interest in the partnership up to that date. Eileen endorsed the check, but before she endorsed it, the words "Pay to Prospect Park Nat'l Bank" had been placed on the check by another party. The money was then used to pay an indebtedness owed by Eileen's parents. The only thing which Eileen had at the date of the hearing to show for her interest in the capital and earnings of the former partnership was a non-interest bearing loan account on the books of a partnership owned by her parents. The account was a recognition, of course, that that partnership still owed her the $15,000. The evidence, although weak, slightly preponderates in favor of the conclusion that the parties, including Eileen, really and truly intended that she should join with them as a partner in the conduct of the business for the fiscal year here in question. It follows that the Commissioner erred in taxing any part of her distributive share of the *50 income of the partnership for that year to either of the two petitioners. Decisions will be entered under Rule 50.